UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

INDEPENDANT RESOURCES NETWORK CORP.

                       Plaintiff,

     -against-

NOVA INFORMATION SYSTEMS, INC.,
NOVA CORPORATION, PMT SERVICES, INC.
and BANCARD SERVICES, INC.,

                       Defendants.
----------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 18 2003 ★

LONG ISLAND OFFICE

COMPLAINT

CV 03 0790

SPATT, J.

BOYLE, M.

      Plaintiff, by Sawyer, Davis, Halpern & Demetri, its attorneys, complaining of the defendants, alleges the following:

## JURISDICTION

      1.     At all times herein mentioned, plaintiff Independant Resources Network Corp. ("IRN") was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located in Nassau County, New York.

      2.     At all times herein mentioned, defendant Nova Information Systems, Inc. ("Nova") was and is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in the State of Georgia.

      3.     At all times herein mentioned, defendant Nova Corporation ("NC") was and is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in the State of Georgia.

4. At all times herein mentioned, defendant PMT Services, Inc. ("PMT") was and is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business located in the State of Tennessee.

5. At all times herein mentioned, defendant Bancard Systems, Inc. ("BSI") was and is a corporation organized and existing under the laws of the States of Nevada and/or California, with its principal places of business located in the States of Nevada and/or California.

6. Jurisdiction is conferred on this Court by reason of 28 USC §1332.

7. The amount in controversy exceeds $75,000.00.

8. At all times herein mentioned Nova conducted business throughout the United States, on a regular basis transacted business in the State of New York, contracted to and did supply services in the State of New York, regularly solicited business in the State of New York, and derived substantial revenue from conducting business in the State of New York, all including in Nassau and Suffolk counties.

9. At all times herein mentioned NC, during the occurrence of the transactions referred to herein, conducted business throughout the United States, on a regular basis transacted business in the State of New York, contracted to and did supply services in the State of New York, regularly solicited business in the State of New York, and derived substantial revenue from conducting business in the State of New York, all including in Nassau and Suffolk counties.

10. At all times herein mentioned PMT, during the occurrence of the transactions referred to herein, conducted business throughout the United States, on a regular basis transacted business in the State of New York, contracted to and did supply services in the State of New York, regularly solicited business in the State of New York, and derived substantial revenue from conducting business in the State of New York, all including in Nassau and Suffolk counties.

2

11. At all times herein mentioned BSI, during the occurrence of the transactions referred to herein, conducted business throughout the United States, on a regular basis transacted business in the State of New York, contracted to and did supply services in the State of New York, regularly solicited business in the State of New York, and derived substantial revenue from conducting business in the State of New York, all including in Nassau and Suffolk counties.

12. A substantial portion of the claims asserted in this lawsuit arise out of defendants' transaction of business in the State of New York, including in Nassau and Suffolk counties.

**BACKGROUND**

13. IRN is in the business of marketing merchant processing services for electronic and similar payment and credit transactions.

14. IRN and BSI executed a Merchant Services Agreement (the "MSA"), originally made effective October 30, 1996, which agreement has been subsequently amended.

15. Pursuant to the MSA, IRN undertook to market merchant processing services and provide terminal deployment and support for those accepted as customers (hereafter the "Merchants") by a certain processing service company.

16. Pursuant to the MSA, BSI agreed to report to and pay IRN for IRN's services.

17. The MSA contains the following provision:

> No party to this Agreement may assign its rights or obligations under this Agreement without the express prior written consent of the other parties, such consent not be unreasonably withheld or delayed, except that the obligations of any party under this Agreement may be provided or fulfilled by any parent, subsidiary, affiliate, successor corporation or subcontractor of such party so long as such party assumes full responsibility for such obligations.

18. PMT is the successor by merger with and acquisition of BSI, and by agreement and by its performance of same, PMT assumed BSI's obligations to IRN under the MSA.

3

19. Nova and/or NC is the successor by merger with and acquisition of PMT, and by agreement and by its performance of same, Nova and/or NC assumed BSI's and PMT's obligations to IRN under the MSA.

## FIRST COUNT: BREACH OF CONTRACT

20. Defendants have failed to properly service Merchant accounts, failed to submit reportings to IRN, submitted inaccurate reportings to IRN, and failed to pay IRN monies due under the MSA (including, but not limited to, transactional revenues, postage charges and annual fees).

21. The amount of monies due from defendants to IRN exceeds $75,000.00; the total amount due IRN being unknown to IRN.

22. IRN markets its services through sales agents.

23. IRN's sales agents' customers—Merchants, maintain personal relationships with IRN's sales agents.

24. The credit card processing service business is extremely competitive. It is common for sales agents, in the event they are not promptly paid by their principals (e.g., IRN) to transfer their customer Merchants' business to other providers of merchant processing services (e.g. competitors of IRN).

25. IRN's sales agents receive compensation based on revenues received by IRN emanating from those sales agents' customer Merchants, following reporting and payment to IRN by defendants.

26. Defendants' failure to properly report to and pay IRN monies has caused IRN to be unable to properly report and pay its sales agents.

27. At the time of the making of the MSA, defendants knew that a breach of reporting and payment obligations to IRN would leave IRN unable to report and pay its sales agents, and that those sales agents would (a) have their customer Merchants switch to a competitor of IRN, resulting in a loss of existing Merchant accounts, and (b) no longer procure Merchant accounts for IRN, resulting in a loss of prospective business in the form of new Merchant accounts.

28. As a result of IRN not reporting to and paying its sales agents, some of its sales agents have terminated their relationship with IRN, have transferred their existing customer Merchants' accounts' business to IRN's competitors and/or merchant processing service companies, and have ceased obtaining new Merchant accounts for IRN.

29. In addition to monies due IRN for direct breach of contract damages as alleged above, IRN is entitled an accounting from defendants, recovery of its damages incurred as a result of the loss of existing customers and prospective business, the amount of which is presently unknown, but is reasonably believed to exceed $5 million, and punitive damages in an amount determined by the Court (by reason of defendants' breach of their fiduciary responsibilities to IRN).

## SECOND COUNT:  CONVERSION

30. By written agreement between IRN and BSI, it was established that "Merchant account ownership will be shared equally...." and that neither IRN nor BSI would

> ...discharge, sell, or transfer their respective ownership, ongoing residual interest or account responsibilities without a signed written agreement from the other party.  It is also the understanding that the selling party must give first right of refusal to the other party in any case which account ownership changes.

31. Defendants have failed to report accurately on transactions involving certain Merchants accounts and have totally failed to report with respect to certain Merchant accounts, to

5

the extent that defendants have exercised dominion over and have converted said Merchant accounts to their own sole use and benefit.

32. Without IRN's permission, defendants have partially discharged, sold or transferred their respective Merchant ownership interest, ongoing residual interest and account responsibilities, all to defendants' own use and benefit, without providing IRN with a "first right of refusal."

33. IRN has demanded, and does hereby demand, that defendants return IRN's shared ownership of Merchant accounts.

34. Defendants have failed to return shared ownership of Merchant accounts, and dominion over same.

35. IRN has suffered direct and consequential damages as alleged above, which damages constitute the reasonable value of the Merchant accounts converted.

36. Defendants owe IRN compensatory and consequential damages, the amount of which is unknown to IRN, but exceeds $75,000.00; and IRN is entitled to punitive damages (in the event defendants' conversion is established to have been malicious and/or in reckless disregard of IRN's rights).

### THIRD COUNT: ACCOUNTING

37. Because of their shared Merchant account ownership, and defendants' responsibilities to report and pay monies to IRN, with IRN not having direct knowledge of the transactions concerning which defendants have an obligation to report and make payment, there existed and exists a fiduciary relationship of trust between IRN and defendants.

38. Defendants have breached that relationship of trust by, *inter alia*, their actions stated above.

39. By reason of the above, IRN is entitled to an accounting from defendants with respect to all transactions that are the subject of or related to the agreements between IRN and defendants, judgment for the amount found due, and IRN's attorneys fees, expert fees and expenses incurred to determine and collect the monies due IRN, and punitive damages.

WHEREFORE, IRN demands judgment against defendants as follows:

A. On the first count, an accounting, compensatory (including direct and consequential) damages, and punitive damages in amounts determined by the Court;

B. on the second count, IRN's compensatory damages (including direct and consequential damages), punitive damages, and its reasonable attorneys fees, expert fees and costs, incurred in the prosecution of this action;

C. on the third count, an accounting from defendants with respect to all transactions that are the subject of or related to the agreements between IRN and defendants, judgment for the amount found due, and IRN's attorneys fees, expert fees and expenses incurred to determine and collect the monies due IRN; and

D. such other and further relief as the Court deems just and proper under the circumstances, and the costs and disbursements of this action.

Dated: Garden City, New York
February 18, 2003

SAWYER, DAVIS, HALPERN & DEMETRI

By: _____
JAMES SAWYER (3290)
(A Member of the Firm)
Attorneys for Plaintiff
600 Old Country Road, Suite 330
Garden City, New York 11530
(516) 222-4567

g:\clients\irn\complaint.doc

7